# Alexander Nissan Inc. v. Maritz LLC

C.P. of Lycoming County, No. CV-14-02,003

*Dean F. Piermattei* and *Stephen Moniak*, for plaintiff.
*Alexander Nemiroff*, for defendant Maritz, LLC.
*Robert E. Chernicoff*, for defendant Northwoods Nissan.

GRAY, *J.*, May 29, 2015—Before the Court are two sets of preliminary objections to Plaintiff's complaint. The following opinion is provided in support of this Court's rulings.

### Factual Background

On August 4, 2014, Alexander Nissan, Inc. ("Alexander Nissan") filed a complaint against Maritz, LLC ("Maritz") and Northwoods Auto, Inc. d/b/a Northwoods Nissan (collectively, "Northwoods Nissan").

The complaint contains ten counts related to the alleged wrongful disclosure and/or access by Defendants of Alexander Nissan's valuable customer list. On August 20, 2014, Maritz filed a notice of removal to federal court. On January 28, 2015, the United States District Court for the Middle District of Pennsylvania ("District Court") remanded the case back to the Lycoming County Court of Common Pleas after concluding that Alexander Nissan presented a colorable claim against Northwoods, a non-diverse defendant. On February 3, 2015, Maritz filed preliminary objections in the nature of a demurrer to Count 2, the claim for breach of fiduciary duty, and Count 5, the claim for intentional interference with the dealer agreement between Alexander Nissan and Nissan.[1] On February 19, 2015, Northwoods Nissan filed a preliminary objection in the nature of a demurrer to Count 10 of the complaint. Count 10 seeks relief under the Declaratory Judgment Act, 42 Pa.C.S.A. ¶ 7532, and is the only count against Northwoods Nissan. Argument on all of the preliminary objections was held on March 24, 2015.

The allegations in the complaint provide the following. This matter involves the sales promotion known as Nissan's One-To-One Rewards Program ("rewards program"). This program allows customer "to earn incentive points toward future service, parts and accessory purchases at Alexander Nissan." Complaint, ¶ 13. Maritz "is a national sales and marketing services company that contracts with

---

1. Maritz also objected to the complaint on the grounds that it was improperly verified by counsel. As Alexander Nissan filed a praecipe to substitute verification on March 9, 2015, the Court deems this objection moot.

Nissan to manage One-To-One Rewards Programs offered by individual Nissan dealers and/or other advertising and marketing initiatives offered by Nissan." Alexander Nissan provided a dealer code and password to Maritz to upload their customer list, which included over 2,500 customers in their rewards program. "Alexander Nissan's highly confidential and proprietary customer list is of unique and particular value to its business, and constitutes competitive value to Alexander Nissan and Defendant Maritz was aware of the confidential and competitive nature of this information." Complaint, ¶ 9.

"Alexander Nissan safeguards its customer list and does not permit disclosure if its customer information to any third party, outside of Nissan and its agents for the limited purpose of fulfilling its responsibilities under its dealer agreement with Nissan." Complaint, ¶ 10. "Alexander Nissan and Maritz had a confidential relationship such that sensitive and highly confidential information, including Alexander Nissan's customer list, was to remain strictly confidential and protected from disclosure to third parties." Complaint, ¶ 52. On or about September 26, 2013, without knowledge or consent, Maritz disclosed and provided the customer list to Northwoods. Complaint, ¶ 24. Maritz ultimately acknowledged that it improperly enrolled at least 857 of Alexander Nissan's customers in Northwoods rewards program. Complaint, ¶ 35. Alexander Nissan believes its customer list is now in the public domain and has become valueless.

The District Court summarized the factual allegations in the complaint against Northwoods as follows. Alexander Nissan alleges that a Maritz representative, serving both

Alexander Nissan and Northwoods, provided Alexander Nissan's confidential customer list to Northwoods. The list included about 2,500 customers' names and contact information. Northwoods used the list to enroll all of the customers into Northwoods' one-to-one rewards program. Northwoods refuses to destroy the list or to refrain from using the list to solicit more business.

## Legal Standards

## Preliminary Objections

A party may file preliminary objections based on the legal sufficiency or insufficiency of a pleading (demurrer) pursuant to Pa. R.C.P. 1028(a)(4). A demurrer tests the legal sufficiency of the complaint. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 714 (Pa.Super. 2005). When reviewing preliminary objections in the nature of a demurrer, the court must "accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts." *Thierfelder v. Wolfert*, 52 A.3d 1251, 1253 (Pa. 2012), *citing*, *Stilp v. Commonwealth*, 940 A.2d 1227, 1232 n.9 (Pa. 2007). In deciding a demurrer "it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit a recovery. If there is any doubt, it should be resolved by the overruling of the demurrer." *Melon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. 1994) (citations omitted). "Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt." *Bower v. Bower*, 611 A.2d 181, 182 (Pa. 1992)(emphasis added).

## Breach of Fiduciary Duty

To recover for breach of fiduciary duty, the Plaintiff must establish that a fiduciary or confidential relationship existed between the parties creating a duty of care. *See, e.g., PTSI, Inc. v. Haley*, 2013 PA Super 130, 71 A.3d 304 (Pa. Super. 2013) Pennsylvania Courts have explained what constitutes the requisite fiduciary or confidential relationship.

[A] confidential relationship "appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible" (emphasis added)). Leedom itself recognized the difficulty in precisely defining a confidential relationship, see id. ("No precise language can define the limits of the relation[.]"); accordingly, it is unhelpful to sharply deconstruct the generalized guidance it attempted to provide. Moreover, the term "overmastering influence" itself implies a relational aspect — particularly in terms of social phenomena such as mass advertising, what may be couched as "overmastering" as to one individual will not have the same impact on others. Finally, the Court has maintained this relational focus in other of its descriptions of a confidential relationship. *See, e.g., Estate of Scott*, 455 Pa. at 432, 316 A.2d at 885 (explaining that "[t]he essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the

other"). Simply put, in the absence of actual coercion, overmastering influence does not exist in the abstract. *Basile v. H & R Block, Inc.*, 617 Pa. 212 at 225, 52 A.3d 1202 at 1210 (Pa. 2012), *citing and quoting Leedom [v. Palmer]*, 274 Pa. [22] at 25, 117 A. [410] at 411 (1922) (other citation omitted).

The Pennsylvania Supreme Court explained that the confidential relationship can be established by a legal presumption or, in the absence of such presumption, by a fact specific inquiry as to the nature of the relationship. *Basile, supra*, 52 A.3d at 1210.

Intentional Interference With The Dealer Agreement

The Pennsylvania Supreme Court has adopted Section 766 of the Restatement (Second) of Torts (1979). *See, e.g.*, *Walnut St. Assocs. v. Brokerage Concepts, Inc.*, 610 Pa. 371, 20 A.3d 468 (Pa. 2011), *referencing, Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466,470 (Pa. 1979). In its present form, Section 766 provides that "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." RESTAT 2D OF TORTS, § 766. A claim for intentional interference with performance of a contract requires four elements: "(1) the existence of a contractual relationship;(2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;(3) the

absence of a privilege or justification for such interference; and(4) damages resulting from the defendant's conduct." *Hennessy v. Santiago*, 708 A.2d 1269, 1278 (Pa. Super. 1998)(citations omitted)[2]

Generally, it appears that the interfering conduct must interfere with the performance of the contract or cause a third party to refrain from entering a contractual relationship. *See, e.g. Walnut St. Assocs., supra, Hennessy.* "The gravamen of this tort is the lost pecuniary benefits flowing from the contract itself; other losses, such as emotional distress and loss of reputation, are consequential harms." *Shiner v. Moriarty*, 706 A.2d 1228 at 1239 (Pa. Super. 1998), *quoting, Pelagatti v. Cohen*, 370 Pa. Super. 422, 536 A.2d 1337, 1343 (Pa.Super. 1987).

Declaratory Judgment Act

"The purpose of the Declaratory Judgments Act is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Keystone Aerial Surveys, Inc. v. Pa. Prop. & Cas. Ins. Guar. Ass'n.*, 2001 PA Super 139, 777 A.2d 84, 88 (Pa. Super. 2001), *citing, Juban v. Schermer*, 2000 PA Super 142, 751 A.2d 1190, 1193 (Pa. Super. 2000) (citation omitted). "Under the Declaratory Judgments Act, the trial court is empowered to declare the rights and obligations of the parties, even if no other relief is sought." *Id.* Specifically, the Declaratory Judgments Act, 42 Pa.C.S § 7532, provides the following.

Courts of record, within their respective jurisdictions,

---

2. The Court notes that both parties cited these same four elements in their briefs.

shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

## Discussion

The Court will discuss Maritz's demurrers followed by Northwoods' demurrer. Maritz's first objection is a demurrer to the breach of fiduciary duty claim on the grounds that no fiduciary or confidential relationship has been properly alleged in the complaint. As there is no legal presumption of a fiduciary relationship between an advertiser and client, the specific facts alleged must be reviewed to determine whether they are sufficient to constitute a confidential relationship. *See, e.g., Basile, supra,* 52 A.3d at 1210. In *Basil, supra,* the Court discussed that the fact inquiry needed to be individualized because factors such as whether the individual was on equal footing with the purported fiduciary was at issue. The cases cited by Alexander Nissan in support of its contention that justifiable trust alone is sufficient to establish the requisite confidential relationship almost all involved, whether a gift or transaction, should be voided for upon undue influence pressed upon a party in a weakened mental state or dependence of a party. Plaintiff's Brief at 7; *See, In re Estate of Clark,* 467 Pa. 628, 359 A.2d 777 (Pa. 1976)(weakened mental state or dependence); *similarly see, Frowen v. Blank,* 425 A.2d

412 (Pa. 1981)(age and infirmities); *In re Estate of Scott*, 316 A.2d 883, 885 (Pa. 1974)(no confidential relationship where no significant infirmities established); *Biddle v. Johnsonbaugh*, 664 A.2d 159, 162 (Pa. Super. 1995) (no confidential relationship where lack of significant infirmities established). In another case cited by Alexander Nisson, the court dismissed the breach of fiduciary duty claims with respect to landlord/tenant and parishioner/clergy relationships in that case. *Gaines v. Krawczyk*, 354 F.Supp.2d 573, 580 (W.D.Pa. 2004). The final case cited by Alexander Nissan, *Basil*, *supra*, and all of the cases cited by Alexander Nissan involved one party taking advantage of another party for personal gain. In *Basil*, *supra*, the basis for claiming a fiduciary relationship was that each of the 600,000 individual class members sought tax "assistance from a position of pronounced intellectual and economic weakness" and were targeted for "high-interest refund anticipation loan programs." *See, e.g.*, *Basile*, *supra*, 52 A.3d at 1206, 1211.

In the present case, Alexander Nissan relies on ¶¶9,10 and 52 of their complaint to support its claim of a fiduciary or confidential relationship. In essence, Alexander Nissan focuses on the confidential nature of its list and the limited purpose for which Maritz had access to the list. Alexander Nissan alleges that the confidential relationship arises from the highly sensitive and strictly confidential nature of the information and the concomitant high level of trust surrounding the limited disclosure to Maritz. Complaint, ¶¶ 9, 10 and 52. Alexander Nissan does not allege infirmities or significant disparities in capacities between itself and Maritz. Nor does Alexander Nissan allege that

Maritz took advantage of Alexander Nissan for a personal advantage to Maritz. The Court is not convinced that entrusting confidential proprietary information alone suffices to establish the requisite relationship. As such, the Court will allow Plaintiff the opportunity to amend its complaint to allege any additional factors in support of the requisite relationship that may exist.

As to Maritz's second demurrer, the Court agrees that the Alexander Nissan failed to make out a prima facie case for intentional interference with the dealer agreement. As noted above, "The gravamen of this tort is the lost pecuniary benefits flowing from the contract itself; other losses, such as emotional distress and loss of reputation, are consequential harms." *Shiner v. Moriarty*, 706 A.2d 1228 at 1239 (Pa. Super. 1998), *quoting, Pelagatti v. Cohen*, 370 Pa. Super. 422, 536 A.2d 1337, 1343 (Pa.Super. 1987). In the present case, Alexander Nissan fails to allege how use of its customer list to solicit customers for Northwoods, another dealer with Nissan, harmed Alexander Nissan's dealership contract with Nissan. Alexander Nissan alleges it suffered the loss of the value of its customer list and lost profits but does not factually tie those losses to an interference with the dealership contract. There was no allegation that the dealership contract was modified or terminated as a result of Maritz's actions or that Alexander Nissan suffered pecuniary loss derived from a modification to the dealership contract.

Finally, as to Northwoods demurrer, this Court, like the District Court, concludes that Alexander Nissan presents a colorable claim against Northwoods for a judicial declaration related to the possession and use of Alexander

Nissan's confidential customer list. "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S § 7532. Such relief may resolve a controversy between the parties as to rights with respect to the customer list.[3] As such, the demurrer is overruled.

## ORDER

AND NOW this 29th day of May, 2015, it is ORDERED and DIRECTED as follows.

1. The Maritz Defendant's demurrer to Count 2 is OVERRULED in part and SUSTAINED in part. Plaintiff Plaintiffs shall file an Amended Complaint within 20 days alleging facts to support its claim of a confidential relationship between Alexander Nissan and Maritz.

2. The Maritz Defendant's demurrer to Count 5 is SUSTAINED. Count 5 is stricken from the Complaint.

3. Northwood Nisan's demurrer to Count 10 is OVERRULED.

4. This matter is placed on the Court's April 2016 Trial Term. A separate scheduling Order will be issued this date.

---

3. The Court disagrees that the relief requested is unlawful under the Unfair Trade Practices and Consumer Protection Law, 73, P.S. § 201-1, *et. seq.* (UTPCPL) The UTPCPL provides a private cause of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes." 73 P.S. § 201-9.2. It protects household consumers from unfair business practices but does not protect car dealerships from each other's business practices.